Richard M. RUNGE and Donna M. Runge, as Special Administrators of the Estate of Richard Raymond Runge, deceased, Plaintiffs and Appellees,

v.

PRAIRIE STATES INSURANCE OF SIOUX FALLS, South Dakota, Defendant and Appellant.

Nos. 14939, 14949.

Supreme Court of South Dakota.

Argued Jan. 14, 1986.

Decided Sept. 24, 1986.

Max A. Gors, of Gors, Braun & Carlon, Pierre, and Gary E. Davis, of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellees.

Eugene D. Mayer of Riter, Mayer, Hofer & Riter, Pierre, for defendant and appellant.

MORGAN, Justice.

Appellant Prairie States Insurance (Prairie States) appeals from a jury verdict entered in favor of Richard M. and Donna M. Runge (Runges), as special administrators of the estate of Richard R. Runge (Richard), in a wrongful death action. Runges brought suit to recover from Prairie States under their uninsured motorist policy, since the owner of the vehicle Richard collided with carried no insurance. Prairie States appeals the jury verdict, the denial of a directed verdict, and the denial of a motion notwithstanding the verdict. Runges, by notice of review, challenge the refusal of the trial court to award prejudgment interest. We affirm the trial court on all issues.

Ken LaFurge (LaFurge) was driving his sanitation truck easterly from Fort Pierre into Pierre, South Dakota, on August 7, 1981. As he was crossing the Missouri River Bridge dividing the two towns, the truck quit. Unable to get it started, LaFurge attempted to roll the truck back down the slight bridge incline. The truck became wedged against the curb of the right-hand lane of the bridge. LaFurge testified that he turned on his hazard lights, got out of the truck, checked to make sure the lights were working, and proceeded to walk back to his home in Fort Pierre where he was going to get a pickup truck to pull the stalled truck off the bridge.

At about 9:45 a.m., Richard, a sixteen-year-old resident of Fort Pierre, South Dakota, was heading east across the bridge into Pierre on his motorcycle. Richard struck the rear of the stalled truck and was killed. Two people riding in a car following him testified he was weaving, much like a slalom ski racer, between the painted white lane markings shortly before the crash.

Some of the testimony adduced at trial was in sharp conflict. LaFurge testified that when he returned to the accident scene, he had been gone from the truck for about one hour. One witness, however, testified that she had seen the truck stalled on the bridge at approximately 7:50 that morning, which would mean the truck had been stalled on the bridge for about two hours prior to the accident. Additionally, there was conflicting testimony regarding whether or not the truck's hazard lights were flashing. LaFurge and two other witnesses testified the lights were flashing; others, including the two persons who witnessed the accident, testified they were not. Finally, several witnesses expressed confusion regarding their ability to ascertain whether the truck was stopped. These witnesses testified that due to the slight incline on the bridge in approaching the truck, and the positioning of the truck in relation to light poles and the bridge guard railing, it appeared as if the truck was actually moving with the traffic flow. Only upon nearing the truck could these witnesses tell it was actually stalled. The people who witnessed the accident, however, could tell the truck was stopped and wondered why Richard did not move out into the open left-hand lane to pass.

Initially, Prairie States claims that Richard's negligence was more than slight in comparison with LaFurge's, and as such Runges were not entitled to recover. In its verdict, the jury found that Richard was negligent, but that his negligence was

slight in comparison with LaFurge's negligence. Under the terms of the policy, Runges may recover on the uninsured motorist provision only if they are legally entitled to recover damages from LaFurge.

Prairie States does not argue that LaFurge was not negligent. It concedes that enough evidence was presented to create a jury issue concerning LaFurge's negligence. It is Prairie States' claim that Richard was guilty of more than slight contributory negligence as a matter of law; and that the trial court erred in failing to direct a verdict for Prairie States, or in the alternative, to grant their motion for judgment notwithstanding the verdict.

This court has recently examined the standards applied under the comparative negligence statute. *See Lovell v. Oahe Elec. Co-op.*, 382 N.W.2d 396 (S.D.1986).

When facts show that the plaintiff, beyond reasonable dispute, was guilty of negligence more than slight, it is the function of the trial court to hold, as a matter of law, for the defendant. *Starnes v. Stofferahn*, 83 S.D. 424, 432–33, 160 N.W.2d 421, 426 (1968). The comparison is made with the negligence of the defendant, rather than with the ordinarily prudent person. *Crabb v. Wade*, 84 S.D. 93, 97–98, 167 N.W.2d 546, 549 (1969).

*Lovell*, 382 N.W.2d at 399.

There is no doubt that evidence was adduced at trial whereby the jury could find LaFurge guilty of negligence. Initially, SDCL 32–30–6.1(7) prohibits parking on bridges. Furthermore, the jury heard testimony that no warning lights were operating on the truck and that the truck remained on the bridge for approximately two hours. They could have reasonably found that LaFurge violated SDCL 32–30–6.1(7). The jury members could also have reasonably found that LaFurge was negligent since there was testimony that he obstructed traffic, unnecessarily endangered others, failed to remove his stalled vehicle from the roadway within a reasonable time, and failed to adequately warn oncoming motorists of the hazard created by his stalled vehicle. *See Winburn v. Vander Vorst*, 74 S.D. 531, 55 N.W.2d 609 (1952), aff'd on rehearing, 74 S.D. 531, 59 N.W.2d 819 (1953); *Descombaz v. Klock*, 58 S.D. 173, 235 N.W. 502 (1931), aff'd on rehearing, 59 S.D. 461, 240 N.W. 495 (1932); *Bruening v. Miller*, 57 S.D. 58, 230 N.W. 754 (1930). *See also State Farm Mut. Auto. Ins. Co. v. South Cent. Bell Tel. Co.*, 359 So.2d 1318 (La.App.1978). It is against this negligent conduct that we must now compare the conduct of Richard.

█ Runges argue that in no instance should a court rule that a plaintiff-driver was contributorily negligent as a matter of law in failing to observe a stalled vehicle. *See* 3 Blashfield *Automobile Law & Practice* § 116.62 (1965). While we do not agree that a plaintiff-driver would never be contributorily negligent as a matter of law in failing to observe a stalled vehicle, we do agree with the trial court and hold that the actions of Richard did not amount to contributory negligence as a matter of law. The jury heard testimony that could have allowed reasonable minds to conclude that Richard's negligence was slight in comparison to that of LaFurge. Several witnesses testified that they had difficulty telling whether or not the truck was actually in motion due to the apparent optical illusion created by the bridge incline, railing, and light poles. Furthermore, the testimony of Mr. Marsh, one of the witnesses to the accident, indicated that Richard stopped his slalom maneuver approximately one hundred yards before impact. There was other testimony that Richard was not exceeding the speed limit, which is thirty-five miles per hour. Simple mathematics shows us that a vehicle traveling thirty-five miles per hour would cover a distance of one hundred yards in just under six seconds. Reasonable jurors could conclude that during this six-second interval Richard returned his attention to his driving.

█ Prairie States also claims the trial court erred in instructing the jury. Jury instructions must be considered as a whole in determining if error was committed in giving or refusing to give certain instruc-

tions. *Wheeldon v. Madison,* 374 N.W.2d 367 (S.D.1985). When considered as a whole, jury instructions are adequate when they correctly state the law applicable to the case. *Id.* Finally, the party seeking to set aside the verdict because of erroneous instructions must establish that such instructions were prejudicial. *Id.*

■ In its initial assignment of instructional error, Prairie States claims the court erred in refusing to give its Proposed Instruction 1. This instruction read:

In the exercise of due care one must at all times see, or know from having before seen, that the road is clear, or apparently clear, and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed. Where an accident may be avoided by looking, one is bound in the exercise of due care to look.

This instruction is essentially taken from *Winburn, supra,* and is this court's pronouncement of the "assured clear distance" rule. It, like most other legal rules, has limitations. *See Winburn, supra.*

The trial court gave a version of this instruction, and added a limitation which it felt applied in this fact situation. Instruction 14 read:

It is the duty of any person operating a motor vehicle upon a public highway of this state to keep such lookout for other users of the highway as a reasonably prudent person would maintain under the same or similar circumstances, and to have the motor vehicle driven by him under such control that he can stop the same, or otherwise avoid an accident, within his range of vision, unless by reason of a condition or circumstances which could not have been reasonably anticipated by an ordinarily prudent person in a like position, he could not stop or otherwise avoid an accident.

We hold that refusing to give Prairie States' Proposed Instruction 1 was not prejudicial error. Considered as a whole, Instruction 14 adequately states the law applicable to this negligence action. In any event, it is difficult to ascertain where Prai-

rie States was prejudiced by the trial court's refusal to give its requested instruction, as the requested instruction was essentially contained in Instruction 14.

■ Additionally, Prairie States contends the wording contained in Instruction 7 was prejudicial. Instruction 7 set forth elements to be proven by each party before they could prevail. As originally drafted, a portion of that instruction read: "That Kenneth LaFurge was negligent in having his truck parked on the Missouri River Bridge...." This was subsequently changed to read: "That Kenneth LaFurge was negligent in the manner in which the truck was left on the Missouri River Bridge...." Prairie States claims this impermissibly enlarged the scope of LaFurge's possible negligence.

Prairie States argues that LaFurge's only negligence, if any, lay in his violation of the statute prohibiting parking on a bridge. SDCL 32–30–6.1(7). This argument is without merit. As this court has previously noted, it may constitute negligence for a motor vehicle operator to fail to remove his stalled vehicle from the roadway within a reasonable time, or to fail to adequately warn oncoming motorists of the hazard created by his stalled vehicle. *Winburn, supra; Descombaz, supra; Bruening, supra.* The trial court's instruction adequately reflected this duty. We hold that the change in wording was not prejudicial error.

■ Finally, Prairie States also contends that the verdict form given to the jury was prejudicial. In Instruction 18, the court instructed the jury to determine four issues: 1) whether LaFurge was negligent and if so, was his negligence the proximate cause of the accident; 2) whether or not LaFurge established by a preponderance of the evidence his affirmative defense of more than slight contributory negligence attributable to Richard; 3) whether Richard was guilty of any contributory negligence; and 4) whether Richard's contributory negligence was slight in comparison to LaFurge. Prairie States claims the ver-

dict form deleted the fourth issue of Instruction 18, namely, whether Richard was guilty of more than slight contributory negligence.[1] The verdict form in pertinent part, read as follows:

I

For the defendant on all issues, and therefore no damages are assessed.

II

For the plaintiffs and find no contributory negligence....

III

For the plaintiffs but find slight contributory negligence on the part of decedent.

Viewed as a whole, the verdict form cannot be said to be erroneous. In its instructions, the trial court adequately noted that if the jury found Richard guilty of more than slight contributory negligence, the Runges could not recover. *See* Instruction 11. It then follows that if the jury had found that Richard's contributory negligence was more than slight, such finding would be encompassed by subsection I on the verdict form.

■ By notice of review, Runges claim the trial court erred in refusing to grant prejudgment interest on the award. The jury awarded a lump sum of $35,000 to Runges, which was reduced to $15,000 in the judgment, apparently to reflect the limits of the policy coverage. This court has never determined whether, or to what extent, prejudgment interest is allowable in a wrongful death action. Nor do we think it appropriate to do so in this case.

The prayer for relief in Runges' complaint asked for prejudgment interest, the judgment form they submitted to the trial court also provided for it, but they did not propose any jury instruction to allow it.

First, because of the failure to propose a jury instruction, Runges cannot complain that the trial court did not award interest under SDCL 21-1-13, which provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

The cases relied upon by Runges allowing the trial court to award interest under this statute were all cases where the trial court was the trier of fact in nonjury trials. In this instance, the jury was the trier of fact.

As to the trial court allowing prejudgment interest under SDCL 21-1-11,[2] the issue would appear to us to be moot under the circumstances of this particular case. Had the trial court added a sum for prejudgment interest to the $35,000 figure returned by the jury, the total sum would nevertheless have been reduced to the $15,000 cap set by the coverage limits.

Finally, Runges argue that "where the damages clearly exceed the policy limits an [sic] uninsured motorist coverage, the insurer should be required to pay prejudgment interest on the policy limits from the date of denial of coverage." Runges' theory is that the policy limits are "damages certain" to satisfy the statutory requirement. They urge that we adopt such a rule, however, they do not support this unique theory by any citation of authority. We have previously said that grounds for reversal alleged in a brief, not supported by citation of any authority, is deemed abandoned. *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D.1977). For all of the foregoing reasons, we decline to consider the issue raised by Runges' notice of review.

We affirm the judgment.

---

**1.** This claim, presented on page 23 of Prairie States' Brief, is somewhat confusing. Prairie States misstates the second issue set forth in Instruction 18. The brief claims that the second issue was deleted from the verdict form, but in light of later language in the brief we conclude that Prairie States' claim is that the fourth issue was actually deleted.

**2.** SDCL 21-1-11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying debt.

WUEST, C.J., and HENDERSON, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

FOSHEIM, J., dissents.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

FOSHEIM, Justice (dissenting).

I dissent.

The majority opinion correctly notes that in applying our comparative negligence doctrine the negligence of the plaintiff must be compared to that of the defendant's to determine whether it is more than slight. *Lovell v. Oahe Elec. Co-op*, 382 N.W.2d 396 (S.D.1986). The analysis, however, further requires that the behavior of both the plaintiff and defendant be compared to the reasonable man standard. *Id.* at 399, *citing Nugent v. Quam*, 82 S.D. 583, 594–95, 152 N.W.2d 371, 377 (1967). "[O]therwise, there would be no basis for comparison." *Nugent*, 152 N.W.2d at 377.

We turn then to the negligence of Richard. Seconds before the accident, Richard was slaloming on his motorcycle. It is difficult to conceive of a more negligent or dangerous maneuver, both to himself and other users of the highway. There was evidence that he stopped this reckless behavior just prior to the accident and for the purposes of this decision, we must accept that as a fact. However, it does not follow that we must then also assume that he then totally corrected his hazardous driving and focused his undivided attention to driving properly just before the impact. Actually, had Richard done so, he would have seen the stalled truck. As the majority opinion indicates, even those who testified they witnessed an optical illusion stated that upon approaching the truck they could determine it was stationary. Richard was bound to see what in clear daylight was plainly there to see. *Anderson v. Adamson*, 79 S.D. 429, 112 N.W.2d 612 (1962).

In my opinion the trial court should have directed a verdict, or granted judgment notwithstanding the verdict for the defendant because as a matter of law, the plaintiff was guilty of negligence more than slight in comparison with the negligence of the defendant.