BLAKEY, Appellant v. BOOS et al., Respondents
(153 N.W.2d 305)

(File No. 10339.  Opinion filed October 13, 1967)

**Brady, Kabeiseman & Light** and **C. E. Light,** Yankton, for plaintiff and appellant.

**Kirby, McDonnell & Kirby, Gene McDonnell,** Sioux Falls, for defendants and respondents.

RENTTO, Judge.

Plaintiff seeks damages from the sheriff of Minnehaha County, his deputy and the sheriff's surety, for personal injuries caused him by a fellow jail inmate on February 3, 1963. The jury returned a verdict for the defendants. Plaintiff appeals from the judgment entered thereon. His principal claims are that the court should have directed a verdict for him on all issues except the amount of damages, and that the verdict is contrary to the evidence and instructions of the court. In our review we must accept that evidence and indulge those legitimate inferences which tend to support the verdict.

The defendant Boos had previously been sheriff of Minnehaha County from 1948 to 1952. Subsequently he was U. S. Marshal for the district of South Dakota for about 8 1/2 years. In the November 1962 general election he was again elected sheriff of his county and assumed the duties of that office early in January 1963. At that time the plaintiff Spencer Blakey, Jr., was in jail awaiting trial for grand larceny. He requested the new sheriff to designate him as a trusty, which was done. Apparently, there are two classes of these—those who helped inside the jail and those who helped on the outside. Plaintiff was an inside trusty.

The population of the jail varied from 50 to 70 inmates. At the time in question it was about 60. The jail was under continuous supervision by three jailers, each of whom worked an 8-hour shift. In the performance of their duties they necessarily utilized the services of the trusty inmates. One Porter Williams was also confined in jail when Boos took over as sheriff. He was serving a sentence imposed for contributing to the delinquency of a minor and had been made a trusty by the predecessor sheriff. In the management of the jail it was the practice to permit selected inmates to secure daytime employment on the outside to assist in the support of their families. This could be

4

done only with the permission of the sentencing judge. At Williams' request Boos secured such permission for him.

While so employed he would return to the jail each night and stayed in either a cell provided for the workers or the trusty's cell. Apparently he desired to be changed from these quarters so that he could be alone, and asked to be put into the solitary confinement block on the second floor of the jail, but not into the pad which was situated therein. His request was granted and he was permitted to take with him some articles of personal property including toilet articles. Shortly thereafter his privilege of working on the outside was withdrawn because he violated the rules imposed on him and his status as a trusty was revoked.

On the night of February 3, 1963, inmate Williams disturbed the quietude of the jail by screaming and hollering. Deputy Sheriff Amos, the jailer on duty, was busy at his desk on the first floor, but heard the noises being made by Williams. The plaintiff came to him and reported on Williams' conduct commenting that "Porter is raising Cain, and nobody is going to get no sleep tonight", and suggested that something had to be done. The jailer remarked that he was busy then, but would take care of it later. After he finished his desk work the jailer went up to the cell block where Williams was, accompanied by Blakey and another trusty. He talked to Williams and asked if he was going to quiet down "or are we going to have to water you down?" Williams replied that he wouldn't be quiet.

The jailer then opened the firebox where the hose was kept. The plaintiff took hold of the nozzle and the other trusty turned on the water. The plaintiff directed the stream of water into Williams' cell block through the small opening in the door. Shortly the hose developed a kink shutting off the flow of the water. As the jailer was attempting to remove the kink, Williams hurled a glass bottle of after-shaving lotion at the opening in his cell door. It struck an area that caused it to shatter and a piece of the glass pierced the plaintiff's right eye. Later this eye had to be removed. This is the injury for which plaintiff seeks recovery in this action.

■ Under our law the sheriff has charge of the county jail and all persons by law confined therein. SDC 13.4605. It is his duty to use reasonable care and prudence for the safety and protection of all such persons and his failure to do so constitutes negligence. The cited section provides that the officer in charge of any jail shall conform in all respects to the rules and regulations prescribed by the Board of Charities and Corrections. If the sheriff does not choose to act as jailer of the county jail, the jailer shall be a deputy sheriff.

■ In the annotation in 14 A.L.R.2d at p. 362, concerning the jailer's civil liability for an assault upon an inmate by another prisoner the rule is stated thus:

> "In order to hold an officer in charge of a jail or prison liable for any injury inflicted upon one prisoner by another prisoner, the courts have held generally that there must be knowledge on the part of the officer that there is danger that such injuries will be inflicted, and he must be guilty of negligence in failing to prevent the injury."

A number of cases supporting this rule are cited in the annotation. More recent cases to the same effect are cited in A.L.R.2d, Later Case Service, and the 1967 Supplement thereto. In other words, while the officer is not an insurer of the safety of his prisoners he has a duty to protect them from injury which he should have reasonably foreseen or anticipated. See also 41 Am.Jur., Prisons and Prisoners, § 13; 80 C.J.S. Sheriffs and Constables § 117; Restatement, Second, Torts, § 320.

At the time of this occurrence the following rules and regulations of the Board of Charities and Corrections adopted June 23, 1956, were in full force and effect.

"III.   SUPERVISION OF PRISONERS

**A.   Control of Prisoners in Housing Units**   *   *   *

3.   No special privileges may be earned nor given except that of being made 'trusty' and specific qualifications must be required for them: namely,

a.   Be under a definite jail sentence.

b.   Have neither a retainer or another criminal charge filed against him.   *   *   *

10.   All punishment and disciplinary action against prisoners shall be taken by or with the consent and knowledge of the officer in charge of the jail and a written record must be made on the jail register giving details of the offense for which punishment is given.  No disciplinary action shall be given for conduct or offenses committed prior to the prisoner's arrival at the jail.  Punishment may consist of one or a combination of the following methods:

a.   Restriction of privilege of having visitors, or sending or receiving mail, of being made 'trusty,' or of the use of tobacco.

b.   Solitary confinement on bread and water not more than three days for any one offense, provided however, that other food is not necessary for the preservation of his health in the opinion of the jail physician.   *   *   *

"V.   JAIL  SECURITY

1.   All articles potentially dangerous as weapons or tools must be kept out of prisoner's reach except when needed for a useful purpose, such as mops, brooms, mop wringer, buckets, pans, bottles, dishes and eating utensils, coat hangers or wires, ropes, cords, barber tools, etc.   *   *   *

3.   Frequent, but irregular shakedown of prisoners and their quarters must be made.  This must include the person of the inmates as well as every part of and content of their cells and cell blocks."

Plaintiff urges that violation of these rules and regulations by Boos and Amos caused his injuries.

■   This court is presently committed to the rule that the violation, without legal excuse, of a safety statute is negligence

as a matter of law and not merely evidence of negligence, Zakrzewski v. Hyronimus, 81 S.D. 428, 136 N.W.2d 572. The same has been held as to municipal ordinances. McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485. The plaintiff suggests that similar effect should be given to a violation of the rules and regulations here involved. He points out that by SDC 65.0102(8) and SDC 13.4620 such rules and regulations of the Board of Charities and Corrections are given the force and effect of law and their violation made a crime. There are courts which hold both violations of safety statutes and administrative rules to be negligence as a matter of law and others that hold both to be merely evidence of negligence. Also some hold that a statutory violation is negligence as a matter of law and the violation of an administrative regulation merely evidence of negligence. Major v. Waverly and Ogden, Inc., 7 N.Y.2d 332, 197 N.Y.S.2d 165, 165 N.E.2d 181; Juidici v. Forsyth Township, 373 Mich. 81, 127 N.W.2d 853. The logic of this view is criticized. See comments, University of Detroit Law Journal, Vol. 41, p. 456. We accept the view of the plaintiff. The reasons which persuaded us to hold that the violation of a safety statute or ordinance is negligence as a matter of law apply with equal validity to safety rules and regulations adopted by the Board of Charities and Corrections.

■ ■ The regulations under III, Supervision of Prisoners, in our opinion, are not concerned with the safety of the inmates. Consequently, violations of these provisions would not be within the purview of the rule as to negligence. Those under V, Jail Security, are for the protection and safety of the prisoners so their violation would constitute negligence as a matter of law. The court so instructed as to Subdivision 1, Rule V, but not as to Subdivision 3 of this rule. It is doubtful that the court was requested to give such instruction as to Subdivision 3, or that the failure to so instruct was assigned as error. However, in view of the fact that both the sheriff and the deputy sheriff admitted that they permitted the prisoners to have in their possession glass bottles of toiletries, which was also the practice of the predecessor sheriff, Subdivision 3 is not here material.

■ The sheriff and the deputy sheriff by permitting Williams to have within his reach the bottle which he threw violated

Subdivision 1 of Rule V and such violation was negligence as a matter of law. But that alone is not sufficient to render them liable to the plaintiff. Before they may be held to respond in damages it must further appear that their violation of the duty placed on them by this rule was the proximate cause of plaintiff's injury. Serles v. Braun, 79 S.D. 456, 113 N.W.2d 216. The burden of establishing this is on the plaintiff.

In Louiseau v. Arp, 21 S.D. 566, 114 N.W. 701, 703, 14 L.R.A., N.S., 855, 130 Am.St.Rep. 741, this court said:

"*  *  * it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances."

This statement was quoted with approval in Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471. The late Chief Judge A. K. Gardner writing for the U.S. Court of Appeals, 8 Cir., in Hale v. Montana-Dakota Utilities Company, 192 F.2d 274, at p. 276, involving South Dakota litigation, expressed the same thought thus: "Negligence to be actionable must be such that the injury complained of might reasonably have been foreseen or anticipated." The opinion goes on to point out that the injury to be considered reasonably foreseeable must be within the range of probability when viewed by the ordinary man and not merely possible.

On this feature plaintiff introduced testimony that the defendant deputy sheriff knew that Williams when angered would throw things indiscriminately and had done so on occasions of which the deputy had knowledge. The deputy testified to the contrary. The sheriff and the deputy sheriff denied any knowledge of a previous occasion on which it was claimed Williams, in a fit of anger, had broken some furniture. They both testified that they had no knowledge of Williams ever doing physical harm to anyone prior to the Blakey incident. In addition it is undisputed that Williams had been made a trusty by the prede-

cessor sheriff and that the sentencing judge had granted him the privilege of being released from jail to engage in employment for the support of his family.

In the circumstances here present, we think it was for the jury to say whether the defendant deputy sheriff should reasonably have anticipated or foreseen the injury of the plaintiff. Questions of proximate cause are usually questions of fact to be decided by the jury. It is only where the facts are not in dispute or are such that reasonable men could not differ that proximate cause is a question of law for the court to decide. DeBerg v. Kriens, 82 S.D. 502, 149 N.W.2d 410. As we view this record the court acted properly in submitting this matter to the jury. Their determination of this issue in favor of the defendants, is supported by substantial evidence. Consequently, we may not disturb it. Rumbolz v. Wipf, 82 S.D. 327, 145 N.W.2d 520.

The plaintiff urges error in some of the instructions given and in refusal to give some of his requested instructions. We find no merit in these contentions. The instructions given when considered as a whole fairly informed the jury as to the applicable principles of law. In substance they incorporated the requests to which the plaintiff was entitled.

Affirmed.

HOMEYER, P. J., and ROBERTS and HANSON, JJ., concur.

BIEGELMEIER, J., concurs specially.

BIEGELMEIER, Judge (concurring).

The Jail Rules and Regulations adopted by the Board of Charities and Corrections are stated to be "For the **Guidance** of Personnel and Governing Inmates Conduct" (Emphasis added). In my opinion these rules are for the guidance only of the personnel and a violation thereof is not negligence as a matter of law, but, at most, evidence of negligence. Further, Section V being headed "Jail Security" has for its purpose denying the prisoner weapons, tools or articles which he might use to escape and not for the purpose of protecting other prisoners. The in-

struction given by the trial court was more favorable to plaintiff than that to which he was entitled, and therefore he cannot complain. Otherwise I concur in the opinion and the result reached.